**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**STEVEN CAMPBELL,**

      **Plaintiff,**         **CIVIL ACTION NO. 04-CV-73143-DT**

vs.

      **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF
SOCIAL SECURITY,**         **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Steven Campbell filed an application for Disability Insurance Benefits (DIB) with Defendant on March 25, 2002. (Tr. 41). Plaintiff alleged he had been disabled since February 5, 2002. *Id.* Plaintiff meets the special insured requirements for disability through December 31, 2006. (Tr. 16). Defendant initially denied Plaintiff's application. (Tr. 30). Plaintiff appealed and received a hearing before Administrative Law Judge (ALJ) Anthony B. Roshak on June 30, 2003. (Tr. 156). On July 23, 2003, the ALJ denied Plaintiff's appeal in a written decision. (Tr. 15-22). The ALJ

concluded that Plaintiff had a severe medical impairment, but retained the ability to do unskilled light work with an option to sit or stand at will that did not involve lifting or carrying more than ten pounds. (Tr. 21). The ALJ relied on the testimony of a vocational expert to conclude that there were a substantial number of jobs in the economy that Plaintiff could perform, and concluded that Plaintiff was not disabled. *Id.* Plaintiff was born November 1, 1974, and was 28 at the time of the ALJ's decision. (Tr. 41). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on June 18, 2004, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5); 20 C.F.R. § 404.981.

## MEDICAL HISTORY

On February 5, 2002, Plaintiff collapsed and suffered a period of unconsciousness. He was admitted for observation to North Oakland Medical Center and monitored by Dr. Rekha Khera, M.D. (Tr. 105). While under observation, Plaintiff suffered episodes of first, second, and third degree heart block. *Id.* On February 8, 2002, Dr. Khera and Robert Holmes, M.D. installed a permanent pacemaker in Plaintiff's chest. (Tr. 107). Plaintiff was discharged on February 10, 2002. (Tr. 105).

Plaintiff continued to treat with Dr. Khera after the surgery. (Tr. 129-135). Plaintiff complained of dizziness, chest pain, and shortness of breath on exertion. (Tr. 129-130). Plaintiff was referred to Avi M. Desai, M.D. on April 9, 2002. (Tr. 138). On April 17, 2002 Dr. Desai administered a polysomnograph on Plaintiff. (Tr. 137). Plaintiff's sleep patterns appeared to be within normal limits, although Dr. Desai noted that Plaintiff had exhibited some "very mild sleep disorder breathing." *Id.* Dr. Desai recommended that Plaintiff begin using a continuous positive airway pressure (CPAP) machine and lose weight. Id.

On May 25, 2002, Robert H. Digby, M.D., a state agency physician, performed a residual functional capacity analysis of Plaintiff. (Tr. 97-103). Dr. Digby concluded that Plaintiff could perform light work with limited pushing, pulling, and reaching with his arms, no exposure to hazards, and only occasional climbing, balancing, stooping, kneeling, crouching, or crawling. *Id.*

On December 2, 2002, Dr. Khera filled out a "treating physician medical questionnaire," in which she provided her estimate of Plaintiff's physical capacities. (Tr. 146). She noted that Plaintiff continued to complain of fatigue, dizziness, difficulty sleeping, and chest pain and shortness of breath on exertion and at rest. *Id.* Dr. Khera opined that Plaintiff could not sit or stand for six of eight hours because needed to rest for between thirty and forty-five minutes every four hours, and that he occasionally needed to nap when he became sleepy. (Tr. 148). Dr. Khera found that Plaintiff would be able to lift no more than ten pounds occasionally and could not tolerate exposure to magnets or unprotected heights. (Tr. 149). Dr. Khera examined Plaintiff on January 31, 2003. Plaintiff continued to complain of occasional shortness of breath, but he denied any problems with dizziness or chest pain. (Tr. 155).

## **PLAINTIFF'S STATEMENTS AND TESTIMONY**

On April 26, 2002, Plaintiff completed a daily activities questionnaire for the Department of Disability Services. (Tr. 71-74). At that time, Plaintiff reported that he did some work around the house, including light dusting, washing dishes, and shopping, and that he enjoyed reading, watching television and movies, playing video games, and working on model cars and puzzles. (Tr. 72-73).

At the June 30, 2003, the ALJ took testimony from the Plaintiff and Raymond Dulecki, a vocational expert. (Tr. 157). Plaintiff testified that, at the time of the hearing, he was twenty-eight

years old, stood five feet nine inches tall, and weighed two hundred and forty pounds. (Tr. 159). He also testified that he does no house or garden work, has no hobbies, does not participate in sports, and shops "very little." (Tr. 161). Plaintiff claimed that while he was able to take care of his personal needs, he was able to climb stairs only occasionally, he was able sit or stand for no more than two hours at a stretch, and was able to walk approximately one mile without stopping. (Tr. 163-65).

The vocational expert testified about the availability of jobs for a person of Plaintiff's age, educational level, and work history who was subject to the functional limitations implied in Plaintiff's testimony. (Tr. 172-176). When asked to assume that Plaintiff's claimed limitations in his ability to sit, stand, walk, lift, carry, push or pull were entirely credible, the vocational expert testified Plaintiff would be able to perform several thousand jobs in the regional economy. (Tr. 173). When asked to assume that all of Plaintiff's claimed limitation were credible, the vocational expert testified that Plaintiff's alleged problems, which included maintaining consciousness for eight hours, dizziness, and difficulty handling stress would preclude all work. (Tr. 173).

## **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function

of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## **DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he cannot, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform

specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

The ALJ concluded that Plaintiff suffered from a severe impairment that was not medically equal to a listed severe impairment and that Plaintiff could not perform his past work. The ALJ denied Plaintiff's claim because he determined that there were other jobs available in the economy for a person of Plaintiff's age, educational level, and functional capacity.

Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Khera's opinions. Specifically, Plaintiff claims that the ALJ should have given complete deference to Dr. Khera's claims that Plaintiff's condition would prevent him from working for more than one or two hours in a regular workday, and that he would miss several days of such work each month due to his medical condition.

Plaintiff's argument that the ALJ was required to conclude that Plaintiff must lie down during the day relies principally on the treating physician rule. The medical opinions and diagnoses of treating physicians are entitled to great weight. *King v. Heckler*, 708 F.2d 1048 (6th Cir. 1983). Indeed "if the opinion is uncontradicted, complete deference . . . must be given to such opinions and diagnoses." *Id.* However, the ALJ is not bound by the conclusory statements of treating physicians where they are unsupported by detailed objective criteria. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).

Dr. Khera's opinions regarding Plaintiff's need to rest during the day are not entitled to complete deference under the treating physician rule. Dr. Khera's statements that Plaintiff is unable to work for more than a few hours at a time and cannot work at all for several days in any given month are little more than repetitions of Plaintiff's subjective complaints and are not supported by objective medical evidence. This circumstance alone would justify the ALJ's decision to give these statements less than full deference. Dr. Khera's claims are in substantial conflict with the objective medical evidence, including the results of Plaintiff's polysomnograph and Holter monitor tests, which show only very mild sleep disturbance and no substantial ongoing impairment of Plaintiff's heart function post pacemaker implantation. Additionally, these statements conflict with statements in Plaintiff's daily activities report and Dr. Khera's office notes from Plaintiff's January 31, 2002 visit. Given the conflicting nature of the evidence concerning these statements by Dr. Khera, the ALJ was free to conclude that Plaintiff retains the physical capacity to perform eight hours of light work subject to certain exertional limitations.

Plaintiff also argues that the vocational expert was improperly instructed to discount Plaintiff's claimed non-exertional limitations. Plaintiff's argument is ultimately a half-hearted attack on the ALJ's RFC determination. Plaintiff's claims concerning his non-exertional limitations are inconsistent. Plaintiff, at various points in the record, has claimed that he is and is not able to do housework, does and does not do substantial shopping, and does and does not have substantial hobbies. Moreover, Plaintiff's non-exertional complaints are not supported by objective medical evidence.

There is substantial evidence on the record to support the ALJ's RFC determination. The ALJ properly relied on testimony from an adequately instructed vocational expert about the

availability of work for someone like Plaintiff to determine that Plaintiff was able to perform a substantial number of jobs in the economy, and thus was not disabled.

## RECOMMENDATION

Plaintiff's Motion for Summary Judgment should be **DENIED**, and Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

DATED: July 15, 2005              s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

  I hereby certify that a copy of this Report and Recommendation was served upon Steven Campbell and Counsel of Record on this date.

Dated: July 14, 2005           s/ Lisa C. Bartlett
                  Courtroom Deputy